LAW OFFICE OF

# MICHAEL K. BACHRACH

224 WEST 30TH STREET, SUITE 302
NEW YORK, N.Y. 10001
--------------
TEL. (212) 929-0592 · FAX. (866) 328-1630

MICHAEL K. BACHRACH *                                          http://www.mbachlaw.com
* admitted in N.Y., MN and D.C.                                michael@mbachlaw.com

March 18, 2020

**By ECF**
**Copy to follow by email**

The Hon. Sterling Johnson Jr.
United States District Court
Eastern District of New York
Cadman Plaza East
Brooklyn, New York 11201

> *Re: United States v. Alexander Ndaula,*
> *16 Cr. 649 (SJ)*

Dear Judge Johnson:

I represent Defendant Alexander Ndaula in the above-referenced matter and submit this short reply to the Government's sentencing memorandum, dated, March 17, 2020 (Doc. No. 68), in the above-referenced matter.

At the outset the defense notes that the Government does not seek additional jail time for Mr. Ndaula and the parties are in agreement that he has already completed service of the 24-month term of imprisonment originally imposed by this Court in 2018.  See Judgment, dated, February 28, 2018 (Doc. No. 38), at 3-4; see also Amended Judgment, dated, April 11, 2018 (Doc. No. 47), at 3-4.  The parties are also in agreement that Mr. Ndaula's previously imposed term of supervised release began when he was released from BOP custody and transferred to ICE detention on August 21, 2018, approximately 16 months ago.  See BOP Inmate Data Form (annexed to Defendant's Sentencing Memorandum, dated, March 13, 2020 [Doc. No. 66], as "Exhibit A").

The only dispute that remains is whether this Court can or should re-sentence Mr. Ndaula to any additional period of supervised release.  The Government seeks additional supervised release based upon a theory that has never been approved in this District or anywhere in this Circuit, and, for the reasons that follow, should be rejected by this Court as well.

The Government's proposed form of sentencing discretion is creative but is not based in the reality of how sentences are imposed within this District or anywhere in this Circuit for violations of supervised release.  As this Court is aware, within this District and this Circuit sentencing courts as a practice do not impose segregated sentences in the manner suggested by the Government.  To the contrary, sentencing courts in this District and this Circuit consider whether

The Hon. Sterling Johnson Jr.
March 18, 2020
Page 2 of 5

each *violation of supervised release* should be sentenced the same or differently from each other, not whether – in underlying multi-count cases – a different VOSR sentence should be imposed in relation to each *underlying count of conviction*.

For starters, it is the "breach of trust" that is punished by a supervised release violation, not the prior counts of criminal conviction. See U.S.S.G. Ch. 7, Part A, Intro., Cmt. 3(b) ("at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator") (emphasis added). How then could the breach of trust be different in relation to one underlying count of conviction but not the other? It can't.

The Government's argument makes even less sense when one looks at Mr. Ndaula's underlying criminal convictions. On September 30, 2014, Mr. Ndaula pleaded guilty, pursuant to a plea agreement, to both counts of his Indictment, which charged him in the District of Massachusetts with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and Wire Fraud, in violation of 18 U.S.C. § 1343. See Indictment, dated, July 10, 2013, United States v. Ndaula, 13 Cr. 40016 (TSH) (D.Mass.) (annexed hereto as, "Reply Exhibit A"). Both counts related to overlapping conduct. In sum and substance Count 1 alleged:

> A major purpose and objective of the conspiracy charged in Count One was to obtain money by facilitating the fraudulent purchase and sale of real estate, including but not limited to facilitating the use of false statements on loan applications, and the use of other misrepresentations, to induce mortgage lenders to lend money for the purpose of real property.
>
> Another purpose of the conspiracy charged in Count One was to profit from the fraudulently purchased properties, including but not necessarily limited to leasing the properties to third parties for monthly rent.

Reply Exhibit A at 3 ¶¶ 11-12. Count 2 charged Mr. Ndaula with a specific instance in which he was alleged to fraudulently purchase property in Worcester, Massachusetts. See Reply Exhibit A at 12 ¶¶ 43-44.

For this conduct the Honorable Timothy S. Hillman, United States District Court Judge for the District of Massachusetts, sentenced Mr. Ndaula to two **concurrent** terms of 21-months imprisonment to be followed by two **concurrent** terms of 3 years supervised release. See Judgment, filed, August 18, 2015, United States v. Ndaula, 13 Cr. 40016 (TSH) (D.Mass.), at 2-3 (annexed hereto as, "Reply Exhibit B").

Since the sentences for the underlying counts of conviction were each imposed *concurrently in all respects*, it would be completely unreasonable to impose *consecutive* VOSR sentences in relation to each underlying count. Indeed, outside of proposing consecutive sentencing as a means of re-attaining a sentence that the Second Circuit has already remanded for

The Hon. Sterling Johnson Jr.
March 18, 2020
Page 3 of 5

plain error, the Government has offered no basis for justifying *why* Mr. Ndaula's VOSR sentence should be treated differently in relation to each of the two underlying counts of conviction.

Stated another way, Judge Hillman concluded that the sentences for both counts of conviction should run concurrently. See Reply Exhibit B at 2-3. This Court likewise concluded the sentences for Mr. Ndaula's violations of supervised release should all run concurrently as well. See Judgment (Doc. No. 38), at 3-4; Amended Judgment (Doc. No. 47), at 3-4; see also Transcript of Sentencing Hearing, dated, January 18, 2018 (hereinafter cited as, "S.Tr."), at 2-5. And, just as importantly, when Mr. Ndaula was previously sentenced by this Court the Government likewise did not seek a consecutive sentence. See S.Tr. 2-5. Since this Court previously determined that a fully concurrent sentence was reasonable, but not greater than necessary, to serve the purposes of sentencing, the "parsimony clause" of 18 U.S.C. § 3553(a) precludes this Court from imposing what would be in effect a more severe (i.e., lengthier) sentence. See United States v. Dorvee, 616 F.3d 174, 184 (2d Cir. 2010) ("Plainly, if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not ... impose the higher."), quoting, United States v. Ministro–Tapia, 470 F.3d 137, 142 (2d Cir. 2006).

Finally, as discussed in Defendant's Sentencing Memorandum, Mr. Ndaula has already served the maximum sentence permissible. See Def. Sent. Memo. (Doc. No. 66) at 3-5. Wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 1349, respectively, are both Class C felonies. See 18 U.S.C. § 3559(a)(3) ("An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is … less than twenty-five years but ten or more years, as a Class C felony[.]").   The maximum term of supervised release that may be imposed for a Class C felony is three years. See 18 U.S.C. § 3583(b)(2). However, that term is reduced by "*any* term of imprisonment that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h) (emphasis added).

As discussed by the Second Circuit in United States v. Rodriguez, 775 F.3d 533 (2d Cir. 2014), a case involving a second revocation of supervised release but nonetheless explaining the point well:

> Pursuant to our interpretation of 18 U.S.C. § 3583(h), his term of supervised release must be reduced by "any term of imprisonment" thereafter imposed upon revocation of his supervised release, which adds up to two years and 128 days (two years from the 2012 sentence plus 128 days from the 2013 sentence). Thus, the maximum term of supervised release that the District Court could impose on Rodriguez in connection with his most recent violation is 237 days, or three years minus two years and 128 days. By imposing a term of supervised release of one year, the District Court's sentence exceeded by 128 days the 237-day supervised release term still available under the statutory maximum for Rodriguez's offenses. This constitutes plain error.

The Hon. Sterling Johnson Jr.
March 18, 2020
Page 4 of 5

<u>Rodriguez</u>, 775 F.3d at 537.  Because the statutory maximum term of supervised release for Mr. Ndaula's original counts of conviction was three years, <u>see</u> 18 U.S.C. § 3583(b)(2), after revocation of those terms this Court is not permitted to exceed an aggregate term of three years when sentencing Mr. Ndaula to a new term of imprisonment and new term of supervised release. <u>See</u> 18 U.S.C. § 3583(h).

Here, this Court originally sentenced Mr. Ndaula to 24 months imprisonment followed by two years of supervised release (<u>i.e.</u>, a total aggregate sentence of 4 years), which the Second Circuit reversed since it exceeded the maximum aggregate term of three years.  <u>See</u> <u>United States v. Ndaula</u>, Docket No. 18-636, 784 Fed.App'x 50, 51 (Mem) (2d Cir. November 15, 2019) (footnotes omitted).  As a result of the VOSR sentenced previously imposed by this Court, however, Mr. Ndaula ended up completing the terms of his imprisonment, after which he was released from BOP custody and immediately detained by ICE, which then detained Mr. Ndaula for an additional 16 months.

"The government does not dispute the proposition advanced in the defendant's sentencing submission …. that a term of supervised release begins to run after a defendant has been released from BOP custody and is not tolled if that defendant is subsequently detained in ICE custody."  Gov't Sent. Memo. (Doc. No. 68) at 4 n.2.  As a result, the Government's position concedes that all 16 months served by Mr. Ndaula in ICE custody counts towards his fulfillment of any of the terms of his supervised release.  <u>See</u> <u>Abimobola v. United States</u>, 369 F. Supp. 2d 249, 253 (EDNY 2005) (Gershon, J.); <u>Douglas v. United States</u>, Docket No. 08 Cv. 4728 (FB), 2009 WL 1322328, at *1 (EDNY May 13, 2009) (Block, J.); <u>Dong Cai v. United States</u>, Docket No. 13 Cv. 3617 (ARR), 2013 WL 5934314, at *3 (EDNY Nov. 1, 2013) (Ross, J.); <u>United States v. Wint</u>, Docket No. 12 Cr. 85 (JGM), 2017 WL 1901674, at *4 (D.Vt. Feb. 3, 2017), <u>report and recommendation adopted,</u> Docket No. 12 Cr. 85 (JGM), 2017 WL 1900284 (D.Vt. May 9, 2017); <u>Hassoun v. Searls</u>, Docket No. 19 Cv. 370 (EAW), 2019 WL 6798903, at *4 (WDNY Dec. 13, 2019); <u>see also</u> <u>United States v. Garcia-Rodriguez</u>, 640 F.3d 129, 132-34 (5th Cir. 2011) (expressly holding that a defendant's term of supervised release commences immediately upon his transfer from BOP custody to ICE detention); <u>United States v. Bussey</u>, 745 F.3d 631, 633 (2d Cir. 2014) (recognizing in dicta that "the Fifth Circuit ruled that supervision was not tolled during administrative detention pending deportation").

Therefore, since Mr. Ndaula has already completed the terms of his 24-month sentence of imprisonment and also served approximately 16 months of supervised release, Mr. Ndaula has already served an aggregate sentence greater than the three-year aggregate sentence that this Court may now impose.  <u>See</u> 18 U.S.C. §§ 3583(b)(2), 3583(h).  Accordingly, a sentence of time served is required and the Government's attempt to contort the sentencing process in a manner never before adopted by any judge in this District or this Circuit should be rejected out of hand.

Accordingly, for all of the reasons discussed herein as well as those addressed in Defendant's Sentencing Memorandum, dated, March 13, 2020 (Doc. No. 66), this Court should re-sentence Mr. Ndaula to a sentence of "time served".

As always, we thank Your Honor for his time and consideration.

The Hon. Sterling Johnson Jr.
March 18, 2020
Page 5 of 5

Respectfully submitted,

Michael K. Bachrach
*Attorney for Defendant Alexander Ndaula*

Attachments

cc:     AUSA F. Turner Buford (by ECF)

# **Reply Exhibit A**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     ]
                                   ]
                                   ]   No.   13cr40014

v.                                      ]

                                      ]   Violations:

ALEXANDER NDAULA, also known   ]
as "Money Mals, "Mal" and "Mals"   ]    Conspiracy to Commit Wire Fraud
                                     ]   (18 U.S.C. § 1349)

                                     ]
                                   ]   Wire Fraud
                                     ]   (18 U.S.C. § 1343)

                                     ]
                                   ]   Forfeiture Allegations
                                   ]   (18 U.S.C. § 981(a)(1)(C) &
                                   ]   28 U.S.C. § 2461(c))

## INDICTMENT

### Certain Relevant Persons & Entities

1.    ALEXANDER NDAULA ("NDAULA") is an individual living in Brooklyn, New York.

2.    Rear Guard Enterprises, Inc., ("Rear Guard") is an entity incorporated in Florida.

    According to records maintained by the Corporations Division of the Commonwealth of

    Massachusetts, Rear Guard has a principal place of business at 14 Wall Street, 20th Floor,

    New York, New York. In the relevant period, however, this address was a temporary

    office maintained by NDAULA. At times relevant to this indictment, NDAULA

    represented himself as Rear Guard's "Executive Director."

3.    The persons identified in this indictment as D.A., S.K., C.R., C.S., I.Q., and J.B. are

    persons known to the Grand Jury. In the relevant period, S.K. and C.R. were persons

    who acted as "straw buyers." As used in this indictment, the term "straw buyer" refers to

    a person who was the apparent buyer of real property, meaning the person in whose name

real property was purchased and in whose name financing from mortgage lenders was
fraudulently obtained. In most instances, however, the straw buyers made no down
payment, paid no closing costs, had no intention of residing at the real property and had
no personal capacity or intention to make mortgage loan payments.

## Background Concerning Mortgage Lending

4. Mortgage loans are loans funded by banks, mortgage companies, and other financial
   institutions ("lenders") to enable borrowers to finance the purchase of real estate.

5. Borrowers secure loans by first submitting a standard application form called the Uniform
   Residential Loan Application ("loan application"). Based primarily on representations
   made in the loan application, lenders evaluate whether potential borrowers meet certain
   requirements to qualify for financing.

6. The loan application requires potential borrowers to disclose information that is material
   to lenders, including, for example, current employment; monthly income; current liquid
   assets; whether the relevant property will be used as the borrower's primary residence;
   and whether the borrower has substantial existing liabilities (*e.g.*, other mortgages).

7. When loan applications are approved, lenders ordinarily wire the funds to the settlement
   agent participating in the closing of title on the property. The settlement agent then
   distributes the funds, again usually by wire, to the seller and others involved in the
   transaction.

## Other General Allegations

8. In or about 2007, D.A. bought a parcel of land in Worcester, Massachusetts. D.A.
   arranged for a two-unit residential building to be built on the property, which became 1A

-2-

and 1B Ockway Street, Worcester, Massachusetts.

9.    In or about early 2007, D.A. met NDAULA at a local nightclub in the Worcester area. NDAULA told D.A. that NDAULA was an investor, and that NDAULA had several investment partners.

10.   NDAULA told D.A. that, in exchange for money, NDAULA could find buyers for the two units at Ockway Street. D.A. agreed.

### Allegations Concerning the Conspiracy Charged in Count One and the Scheme to Defraud Charged in Count Two

#### Objectives

11.   A major purpose and objective of the conspiracy charged in Count One was to obtain money by facilitating the fraudulent purchase and sale of real estate, including but not limited to facilitating the use of false statements on loan applications, and the use of other misrepresentations, to induce mortgage lenders to lend money for the purchase of real property.

12.   Another major purpose and objective of the conspiracy charged in Count One was to profit from the fraudulently purchased properties, including but not necessarily limited to leasing the properties to third parties for a monthly rent.

#### Manner and Means of the Conspiracy

13.   Beginning not later than in or about December 2007, and continuing through at least in or about February 2010, NDAULA, working at various times with D.A. and others known and unknown to the Grand Jury, defrauded mortgage lenders by recruiting straw buyers to buy properties in Massachusetts and elsewhere, and then facilitating the use of material

-3-

misrepresentations on the straw buyers' applications for mortgage loans on those properties. NDAULA and his co-conspirators accomplished the goals of the conspiracy in the following manner:

a.  Through a combination of misrepresentations and financial incentives, NDAULA recruited two straw buyers to act as buyers for real property in Massachusetts and Florida.

b.  NDAULA, working with others, used various means to deceive mortgage lenders into approving mortgage loans for the straw buyers to finance the properties. These means included, but were not necessarily limited to, facilitating the use of material misrepresentations on the straw buyers' loan applications about the straw buyers' employment, assets, and whether the straw buyers intended to use particular properties as their primary residences.

c.  NDAULA used bank accounts and businesses he controlled as tools to further the goals of the conspiracy. NDAULA added the straw buyers to corporate registration paperwork for Rear Guard and represented, or worked with others to represent, on a loan application that a straw buyer was employed by Rear Guard. NDAULA paid a straw buyer for his participation from an account in the name of Rear Guard and used the account to make payments related to the fraudulent purchase of properties in Florida.

d.  To further facilitate the fraud, after the properties were purchased, NDAULA occasionally adopted the identities of the straw buyers when talking to lenders and financial institutions. NDAULA also rented out certain of the properties for

-4-

additional gain.

e. All of the properties purchased during the scheme went into default and were foreclosed upon by lenders, who sold the properties at a loss.

## Overt Acts Committed in Furtherance of the Conspiracy and as Part of the Scheme to Defraud

### A. The Sham Sale of 1B Ockway Street, Worcester, Massachusetts

14. In or about late 2007, NDAULA recruited a straw buyer, C.R., for the unit at 1B Ockway Street, Worcester, Massachusetts. On or about December 18, 2007, C.R. signed a loan application to finance the purchase of the property. The loan application contained material misrepresentations, including

a. stating that 1B Ockway would be C.R.'s primary residence, and

b. stating that C.R. had two bank accounts at Bank of America containing total liquid assets of $105,210.

15. In the relevant period, C.R. lived in New York and had no intention of living at the property in Worcester, Massachusetts. As to the bank accounts, C.R. did not own the Bank of America accounts identified in the loan application.

16. The closing for the unit at 1B Ockway Street occurred on or about December 18, 2007. The HUD-1 settlement statement says that the "cash received from borrower" at closing was $13,140.39. In actuality, NDAULA made this payment by causing a wire transfer to the settlement agent for the transaction, in the amount of $13,140.39, from an account titled "ALEXANDER W NDAULA DBA ALEXANDER ENTERPRISES."

17. On or about December 18, 2007, American Mortgage Network, having approved the loan,

-5-

wired $257,388.27 from its account at Wachovia Bank in North Carolina to the title
insurance company's escrow account in Ohio.

18.     On or about December 20, 2007, D.A. paid NDAULA $12,000.

19.     Mortgage payments were made on the property at 1B Ockway Street for the first few
        months following the closing, but after that the property eventually went into default for
        failure to pay and was foreclosed upon by the lender. In or about February 2010,
        NDAULA fraudulently attempted to stall foreclosure by calling Fannie Mae, while posing
        as C.R., to dispute the foreclosure order entered on that property.

## B.     The Sham Sale of 1A Ockway Street, Worcester, Massachusetts

20.     In or about early 2008, NDAULA recruited S.K. as a straw buyer. NDAULA told S.K.
        that if S.K. helped NDAULA buy real property, S.K. would not need to make the
        mortgage payments, and that when the loan was later paid off S.K.'s credit score would
        improve.

21.     NDAULA thereafter arranged for S.K. to sign closing documents to purchase 1A Ockway
        Street, Worcester, Massachusetts. Shortly afterward, NDAULA sent S.K. a check for
        $3,000.

22.     On or about October 18, 2008, NDAULA gave S.K. a second check, for $1200, drawn on
        an account at Citizens Bank in the name of "Rear Guard Enterprises" ("Rear Guard
        Account").

23.     As part of the closing paperwork for the property at 1A Ockway Street, S.K. signed a loan
        application. He did not fill out the application, but signed it when it was presented to
        him. That application contained at least two material misrepresentations:

-6-

a.   The application stated that 1A Ockway Street would be S.K.'s primary residence. This was false. S.K., who lived in Brooklyn, New York, did not intend to live at the Worcester property.

b.   The application stated that S.K. had two employers, K-Mart and Rear Guard. As to the latter, the application stated that Rear Guard paid S.K. $845.00 a month. While S.K. did work at K-Mart, he never worked for, or was knowingly affiliated with, Rear Guard.

24.   In or about June 2008, NDAULA bolstered the false impression that S.K. was affiliated with Rear Guard by filing paperwork with the Corporations Division of the Commonwealth of Massachusetts listing "Alexander Ndaula" as a "Director" of the company and S.K. as "Secretary." It also listed C.R. as "President."

25.   In or about May 2008, NDAULA falsely verified to the lender that S.K. worked at Rear Guard at a salary of $195.00 per week.

26.   After approving the loan, on or about July 17, 2008, Franklin American Mortgage wired $253,724.90, for the closing for 1A Ockway Street, from an account at Colonial Bank of Alabama to the settlement agent's escrow account at Citizens Bank in Rhode Island.

27.   On or about July 30, 2008, the deed for the transaction was recorded in the Massachusetts Registry of Deeds.

28.   After 1A Ockway Street was sold to S.K., neither S.K. nor NDAULA made mortgage payments on the property, but NDAULA sought to profit from the property by renting it out. In or about April 2009, NDAULA leased 1A Ockway Street to C.S., a resident of Worcester, Massachusetts, at a monthly rent of approximately $1450. C.S. lived at the

-7-

property for approximately a year.

29.    On or about November 16, 2009, during a call with a representative of a bank, NDAULA

posed as S.K. and answered questions about S.K.'s employment and about whether S.K.

held a mortgage on the 1A Ockway Street property.

30.    The property at 1A Ockway Street was eventually foreclosed on by the lender and sold at

a loss. The loan had been insured by the Fair Housing Administration ("FHA"), which is

a division of the U.S. Department of Housing and Urban Development. FHA reimbursed

the lender for its losses on the loan.

### C.    The Sham Sale of Properties in Florida

31.    On or about February 29, 2008, C.R., in coordination with NDAULA, acted as the straw

buyer for two properties, at 340 Crestwood Circle, Apt. 303, West Palm Beach, Florida,

and at 4709 Limerick Drive, Tampa, Florida. The West Palm Beach property is in an

area also referred to as Royal Palm Beach.

### 1.    The West Palm Beach Property

32.    As to the West Palm Beach property, the loan application falsely stated that C.R. had a

"checking or savings" account at Digital Federal Credit Union ("DFCU"), bearing

account number #XXXX476 and holding over $76,000. This was false. Account

#XXXX476 was in fact a loan DFCU had made to C.R. in the amount of $25,000,

payable over 60 months.

33.    On or about May 8, 2008, NDAULA wired $3,000 from the Rear Guard Account to the

real estate attorney who handled the closing for the West Palm Beach property. The

memo line for the wire transfer said, "[R.] PARTIAL CLOSING BALANCE," "R." being

-8-

C.R.'s last name. On May 20, 2008, NDAULA wired $4,000 from the Rear Guard Account to the same attorney. The memo line for the wire transfer said, "REF: [R.]/KENSINGTON," "R." again being C.R.'s last name. Kensington Trust was the entity that sold the West Palm Beach property to C.R. Finally, on May 1, 2008, and on May 30, 2008, NDAULA used other accounts to send the same closing attorney two additional wire transfers, of $9,000 and $2,000, respectively.

34. NDAULA later rented out the West Palm Beach property to a man named I.Q., who paid NDAULA monthly rent of approximately $1,300.

35. The West Palm Beach property eventually went into default for failure to make mortgage payments. The property was foreclosed on by the lender and sold at a loss.

## 2. The Tampa Property

36. As to the Tampa property, on or about February 4, 2008, a few weeks before the closings on the two Florida properties, NDAULA arranged to falsely inflate the assets claimed on C.R.'s loan application to finance the Tampa unit.

37. C.R.'s loan application listed as an asset account #XXXX090 at DFCU, with a current balance of just over $50,000. Account #XXXX090, however, and the funds in it, did not belong to C.R. In actuality, NDAULA arranged with D.A. to create the false appearance that C.R. had additional assets, in order to assist in securing financing for the purchase of the Tampa property. In or about early February 2008, D.A. obtained a $50,000 loan from a lender in Worcester, Massachusetts. On or about February 4, 2008, D.A. deposited $50,175 into account #XXXX090, which as a result had a total balance of $50,402.39. On or about the same date, D.A., at NDAULA's direction, added C.R. as a "joint owner"

of account #XXXX090.

38. In or about January 2008, on behalf of C.R., NDAULA caused $2,000 to be wired to the settlement agent for C.R.'s purchase of the Tampa property from an account at Bank of America in the name of "Quiet Money Realty."

39. NDAULA later rented out the Tampa property to a man named J.B., who paid NDAULA monthly rent of approximately $1,095.

40. The Tampa property eventually went into default for failure to make mortgage payments. The property was foreclosed on by the lender and sold at a loss.

## COUNT ONE

### (Conspiracy to Commit Wire Fraud)

41.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-40 of this

indictment and further charges that:

42.     Beginning in or about December 2007 and continuing through at least February 2010, in

the District of Massachusetts and elsewhere,

### ALEXANDER NDAULA,

defendant herein, knowingly conspired with D.A. and others known and unknown to the

Grand Jury, to commit wire fraud, that is, having devised, and intending to devise, a

scheme and artifice to defraud, and to obtain money and property by means of material

false and fraudulent pretenses, representations and promises, to cause writings, signs,

signals, pictures and sounds to be transmitted by means of wire communication, in

interstate commerce, for the purpose of executing that scheme and artifice, in violation of

18 U.S.C. § 1343.

All in violation of 18 U.S.C. § 1349.

-11-

## COUNT TWO

### (Wire Fraud)

43.    The Grand Jury re-alleges and incorporates by reference paragraphs 1-40 of this
indictment and further charges that:

44.    On or about July 17, 2008, in the District of Massachusetts and elsewhere,

### ALEXANDER NDAULA,

defendant herein, having devised and intending to devise a scheme and artifice to defraud,
and for obtaining money and property by means of material false and fraudulent
pretenses, representations, and promises, did cause writings, signs, signals, pictures and
sounds to be transmitted by means of wire communication in interstate commerce for the
purpose of executing such scheme and artifice, to wit, the transmittal of loan proceeds, by
interstate wiring, for the purchase of the property at 1A Ockway Street, Worcester,
Massachusetts.

All in violation of 18 U.S.C. § 1343.

-12-

## FORFEITURE ALLEGATIONS

### (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

45.     Upon conviction of the offenses alleged in Counts One or Two of this indictment, the

defendant,

### ALEXANDER NDAULA,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C.

§ 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds

traceable to the commission of the offense.

46.     If any of the property described in the paragraph above, as a result of any act or omission

of the defendant,

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with a third party;

    c.     has been placed beyond the jurisdiction of this Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without

        difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21

U.S.C. § 853(p), to seek forfeiture of all other property of the defendant up to the value of

the property described in subparagraphs (a) through (e) of this paragraph.

All pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
FOREPERSON OF THE GRAND JURY

_____
ANDREW E. LELLING
Assistant U.S. Attorney

DISTRICT OF MASSACHUSETTS, July 10, 2013
Returned into the District Court by the Grand Jury Foreperson and filed.

_____
Deputy Clerk

*1:20p.*

-14-

# Reply Exhibit B

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT

## District of Massachusetts

UNITED STATES OF AMERICA

**V.**

**Alexander Ndaula**

**JUDGMENT IN A CRIMINAL CASE**

Case Number: **4: 13 CR 40016 - 01 - TSH**

USM Number: 17953-265

Joan Fund
_____
Defendant's Attorney

[ ] Additional documents attached

---

[ ]

**THE DEFENDANT:**

[✓] pleaded guilty to count(s)   1-2

[ ] pleaded nolo contendere to count(s)
which was accepted by the court.

[ ] was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:     Additional Counts - See continuation page [ ]

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 1349 | Conspiracy to Commit Wire Fraud | 02/28/10 | 1 |
| 18 USC § 1343 | Wire Fraud | 07/18/08 | 2 |

The defendant is sentenced as provided in pages 2 through   **10**   of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on count(s) _____

[ ] Count(s) _____ [ ] is [ ] are dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

07/28/15
_____
Date of Imposition of Judgment

/s/ Timothy S. Hillman
_____
Signature of Judge

The Honorable Timothy S. Hillman

U.S. District Judge
_____
Name and Title of Judge

8/18/15
_____
Date

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 2 - D. Massachusetts - 10/05

| | | |
|---|---|---|
| DEFENDANT: | **Alexander Ndaula** | |
| CASE NUMBER: | **4: 13 CR 40016 - 01 - TSH** | |

Judgment — Page __2__ of __10__

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:    21    month(s)

This term consists of terms of 21 months on Counts 1-2, to be served concurrently.

☐ The court makes the following recommendations to the Bureau of Prisons:

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

     ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

     ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐ before 2 p.m. on _____ .

     ☐ as notified by the United States Marshal.

     ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

✎AO 245B(05-MA)　　(Rev. 06/05) Judgment in a Criminal Case
　　　　　　　　Sheet 3 - D. Massachusetts - 10/05

| | Judgment—Page 3 of 10 |

DEFENDANT: **Alexander Ndaula**
CASE NUMBER: **4: 13 CR 40016 - 01 - TSH**

## SUPERVISED RELEASE

☑ **See continuation page**

Upon release from imprisonment, the defendant shall be on supervised release for a term of :　　**3** year(s)

This term consists of terms of 3 years on Counts 1-2, to be served concurrently.

　　The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed  104  tests per year, as directed by the probation officer.

☐　The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

☑　The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☑　The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐　The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable.)

☐　The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

　　If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

　　The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)　the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)　the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)　the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)　the defendant shall support his or her dependents and meet other family responsibilities;

5)　the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)　the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)　the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)　the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)　the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)　the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)　the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)　the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)　as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

✎AO 245B(05-MA)
(Rev. 06/05) Judgment in a Criminal Case
Sheet 4A - Continuation Page - Supervised Release/Probation -10/05

Judgment—Page ___4___ of ___10___

DEFENDANT: **Alexander Ndaula**
CASE NUMBER: **4: 13 CR 40016   - 01   - TSH**

## ADDITIONAL ☑ SUPERVISED RELEASE ☐ PROBATION TERMS

1. The defendant is prohibited from possessing a firearm, destructive device, or other dangerous weapon.

2. The defendant is to pay the balance of any restitution imposed according to a Court-ordered repayment schedule.

3. The defendant is prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding.

4. The defendant is to provide the Probation Office access to any requested financial information, which may be shared with the Financial Litigation Unit of the U.S. Attorney's Office.

5. The defendant is to participate in a program for substance abuse counseling as directed by the Probation Office, which program may include testing, not to exceed 104 drug tests per year to determine whether the defendant has reverted to the use of alcohol or drugs. The defendant shall be required to contribute to the costs of services for such treatment based on the ability to pay or availability of third-party payment

## Continuation of Conditions of ☑ Supervised Release ☐ Probation

6. The defendant is to participate in a mental health treatment program as directed by the Probation Office. The defendant shall be required to contribute to the costs of services for such treatment based on the ability to pay or availability of thirdparty payment.

7. If ordered deported, the defendant is to leave the United States and is not to return without prior permission of the Secretary of the Department of Homeland Security.

8. The defendant shall use his true name and is prohibited from the use of any false identifying information which includes, but is not limited to, any aliases, false dates of birth, false social security numbers, and incorrect places of birth.

✎AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 - D. Massachusetts - 10/05

Judgment — Page __5__ of __10__

DEFENDANT: **Alexander Ndaula**
CASE NUMBER: **4: 13  CR  40016  - 01  - TSH**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $    $200.00 | $ | $    $237,094.30 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☑ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| GMAC | $100,739.00 | $100,739.00 | |
| Fannie Mae | $50,295.00 | $50,295.00 | |
| HUD | $86,060.30 | $86,060.30 | |

☐ See Continuation
Page

| **TOTALS** | $    $0.00 | $    $0.00 |
|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

    ☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: **Alexander Ndaula**

CASE NUMBER: **4: 13 CR 40016  - 01  - TSH**

Judgment — Page    6    of    10

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  ☐  Lump sum payment of $ _____ due immediately, balance due

  ☐ not later than _____ , or
  ☐ in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☒  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☒ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☒  Special instructions regarding the payment of criminal monetary penalties:

  Payment of the restitution shall begin immediately according to a court-ordered repayment schedule. All restitution payments shall be made to the Clerk, U.S. District Court for transfer to the identified victims. The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

☐ See Continuation Page

  Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:

  The Court grants the United States' motion for entry of a preliminary order of forfeiture.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B    (Rev. 06/05) Criminal Judgment
Attachment (Page 1) — Statement of Reasons - D. Massachusetts - 10/05

| | |
|---|---|
| DEFENDANT: **Alexander Ndaula** | Judgment — Page 7 of 10 |
| CASE NUMBER: **4: 13 CR 40016 - 01 - TSH** | |
| DISTRICT: **MASSACHUSETTS** | |

## STATEMENT OF REASONS

**I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT**

A ☐    **The court adopts the presentence investigation report without change.**

B ☑    **The court adopts the presentence investigation report with the following changes.**

(Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.) (Use Section VIII if necessary.)

1 ☐    **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level, or specific offense characteristics):

2 ☑    **Chapter Three of the U.S.S.G. Manual** determinations by court (including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

Court grants a -2 role reduction under U.S.S.G. § 3B1.2(b).

3 ☐    **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or scores, career offender, or criminal livelihood determinations):

4 ☐    **Additional Comments or Findings** (including comments or factual findings concerning certain information in the presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions):

C ☐    **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

**II    COURT FINDING ON MANDATORY MINIMUM SENTENCE** (Check all that apply.)

A ☑    No count of conviction carries a mandatory minimum sentence.

B ☐    Mandatory minimum sentence imposed.

C ☐    One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum does not apply based on

☐ findings of fact in this case

☐ substantial assistance (18 U.S.C. § 3553(e))

☐ the statutory safety valve (18 U.S.C. § 3553(f))

**III    COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES):**

Total Offense Level:     14
Criminal History Category:     III
Imprisonment Range:     21    to    27    months
Supervised Release Range:    1    to    3    years
Fine Range: $    4,000    to  $    40,000

☑    Fine waived or below the guideline range because of inability to pay.

AO 245B (05-MA)  (Rev. 06/05) Criminal Judgment
Attachment (Page 2) — Statement of Reasons - D. Massachusetts - 10/05

---

| | |
|---|---|
| DEFENDANT:  **Alexander Ndaula** | Judgment — Page  8  of  10 |
| CASE NUMBER: **4: 13 CR 40016  - 01  - TSH** | |
| DISTRICT:      **MASSACHUSETTS** | |

# STATEMENT OF REASONS

**IV**   **ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

    A  ☑   **The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.**

    B  ☐   **The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.**
               (Use Section VIII if necessary.)

    C  ☐   **The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.**
               (Also complete Section V.)

    D  ☐   **The court imposed a sentence outside the advisory sentencing guideline system.**  (Also complete Section VI.)

**V**   **DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (If applicable.)

    A  **The sentence imposed departs** (Check only one.):
          ☐  below the advisory guideline range
          ☐  above the advisory guideline range

    B  **Departure based on** (Check all that apply.):

        1        **Plea Agreement** (Check all that apply and check reason(s) below.):
                    ☐  5K1.1 plea agreement based on the defendant's substantial assistance
                    ☐  5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
                    ☐  binding plea agreement for departure accepted by the court
                    ☐  plea agreement for departure, which the court finds to be reasonable
                    ☐  plea agreement that states that the government will not oppose a defense departure motion.

        2        **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
                    ☐  5K1.1 government motion based on the defendant's substantial assistance
                    ☐  5K3.1 government motion based on Early Disposition or "Fast-track" program
                    ☐  government motion for departure
                    ☐  defense motion for departure to which the government did not object
                    ☐  defense motion for departure to which the government objected

        3        **Other**
                    ☐  Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

    C   **Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.11 Lesser Harm |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.12 Coercion and Duress |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.13 Diminished Capacity |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.14 Public Welfare |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.16 Voluntary Disclosure of Offense |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon or Dangerous Weapon | ☐ | 5K2.17 High-Capacity, Semiautomatic Weapon |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.18 Violent Street Gang |
| ☐ | 5H1.11 | Military Record, Charitable Service, Good Works | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.20 Aberrant Behavior |
| | | | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.21 Dismissed and Uncharged Conduct |
| ☐ | 5K2.0 | Aggravating or Mitigating Circumstances | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.22 Age or Health of Sex Offenders |
| | | | | | | ☐ | 5K2.23 Discharged Terms of Imprisonment |
| | | | | | | ☐ | Other guideline basis (e.g., 2B1.1 commentary) |

    D   **Explain the facts justifying the departure.**  (Use Section VIII if necessary.)

AO 245B ( 05-MA)    (Rev. 06/05) Criminal Judgment
Attachment (Page 3) — Statement of Reasons - D. Massachusetts 10/05

---

DEFENDANT:    **Alexander Ndaula**

CASE NUMBER:    **4: 13 CR 40016  - 01  - TSH**

DISTRICT:    **MASSACHUSETTS**

Judgment — Page    9    of    10

## STATEMENT OF REASONS

**VI   COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM**
(Check all that apply.)

A    **The sentence imposed is** (Check only one.):

☐ below the advisory guideline range

☐ above the advisory guideline range

B    **Sentence imposed pursuant to** (Check all that apply.):

1    **Plea Agreement** (Check all that apply and check reason(s) below.):

☐ binding plea agreement for a sentence outside the advisory guideline system accepted by the court

☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable

☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline system

2    **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):

☐ government motion for a sentence outside of the advisory guideline system

☐ defense motion for a sentence outside of the advisory guideline system to which the government did not object

☐ defense motion for a sentence outside of the advisory guideline system to which the government objected

3    **Other**

☐ Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system (Check reason(s) below.):

C    **Reason(s) for Sentence Outside the Advisory Guideline System** (Check all that apply.)

☐ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)

☐ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))

☐ to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))

☐ to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))

☐ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D))

☐ to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))

☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

D    **Explain the facts justifying a sentence outside the advisory guideline system.**  (Use Section VIII if necessary.)

| | | |
|---|---|---|
| DEFENDANT: | **Alexander Ndaula** | Judgment — Page 10 of 10 |
| CASE NUMBER: | **4: 13 CR 40016 - 01 - TSH** | |
| DISTRICT: | **MASSACHUSETTS** | |

# STATEMENT OF REASONS

## VII  COURT DETERMINATIONS OF RESTITUTION

A  ☐  Restitution Not Applicable.

B  Total Amount of Restitution: _237,094.30_

C  Restitution not ordered (Check only one.):

1  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

2  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

3  ☐  For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

4  ☐  Restitution is not ordered for other reasons.  (Explain.)

D  ☐  Partial restitution is ordered for these reasons (18 U.S.C. § 3553(c)):

## VIII  ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE (If applicable.)

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

| | | |
|---|---|---|
| Defendant's Soc. Sec. No.: | 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 | Date of Imposition of Judgment 07/28/15 |
| Defendant's Date of Birth: | 00/00/81 | /s/ Timothy S. Hillman |
| Defendant's Residence Address: | Federal Custody | Signature of Judge |
| | | The Honorable Timothy S. Hillman   **U.S. District Judge** |
| Defendant's Mailing Address: | Same as above | Name and Title of Judge |
| | | Date Signed  8/18/15 |